UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESSE L. SPENCER,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

CASE NO. 3:15-CV-05925-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial in part of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") did not err in evaluating the medical opinion evidence, nor did the ALJ err by discounting

1  Plaintiff's subjective symptom testimony. Therefore, this matter is affirmed pursuant to sentence
2  four of 42 U.S.C. § 405(g).

3  <center>**PROCEDURAL& FACTUAL HISTORY**</center>

4  On December 30, 2005, Plaintiff filed an application for SSI, and on January 31, 2006,
5  Plaintiff filed an application for DIB. *See* Dkt. 14, Administrative Record ("AR") 52, 573.
6  Plaintiff alleges he became disabled on February 3, 2004, due to bilateral carpal tunnel
7  syndrome, back problems, migraines, upper GI problems, and other pain. *See* AR 87.  Plaintiff's
8  applications were denied upon initial administrative review, reconsideration, and in a written
9  decision by ALJ Ruperta Alexis on November 25, 2008. *See* AR 30, 31, 18-29. Plaintiff appealed
10 ALJ Alexis' decision, and this Court remanded the case for further proceedings on September
11 26, 2011. AR 1035.

12 On remand, ALJ Alexis again found Plaintiff not disabled for the period between
13 February 3, 2004 and November 25, 2008. AR 1146. Plaintiff appealed ALJ Alexis' second
14 decision, and this Court again remanded the case for further proceedings due to an incomplete
15 administrative record. AR 1160-63. On remand, this case was assigned to a new ALJ, Larry
16 Kennedy, who found Plaintiff was not disabled for the period between February 3, 2004 and
17 October 25, 2006. AR 1133-34. However, ALJ Kennedy found Plaintiff was disabled from the
18 period between October 25, 2006 and November 25, 2008.[1] On December 21, 2015, Plaintiff
19 filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

20

21 _____

22 [1] While Plaintiff's first appeal of this case was pending, Plaintiff filed concurrent DIB
   and SSI applications for the period from November 26, 2008 forward. Based on these
23 applications, ALJ Marry Gallagher Dilley found Plaintiff disabled as of November 26, 2008. AR
   1049. This decision is not at issue in this case, and it appears from the record Plaintiff is still
   considered to be disabled as articulated in ALJ Dilley's decision.
24

1    Plaintiff argues ALJ Kennedy's decision to award benefits starting on October 25, 2006,

2    rather than February 4, 2004, was error, because the ALJ: 1) improperly evaluated the opinions

3    of three treating and examining physicians and two other medical sources; 2) improperly

4    discounted Plaintiff's subjective symptom testimony; and 3) incorrectly found Plaintiff was

5    capable of performing work existing in significant numbers in the national economy at Step Five

6    of the sequential evaluation. Dkt. 20, pp. 1-2.

7    <u>**STANDARD OF REVIEW**</u>

8    Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

9    security benefits only if the ALJ's findings are based on legal error or not supported by

10   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

11   Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

12   more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

13   mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

14   750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

15   <u>**DISCUSSION**</u>

16   This case is somewhat unusual in that the ALJ found Plaintiff disabled during at least part

17   of the period at issue, but for different reasons than Plaintiff posits. The ALJ found Plaintiff had

18   the capacity to perform light work, with additional postural, manipulative, and behavioral

19   limitations. AR 1123. With this residual functional capacity ("RFC"), the ALJ found Plaintiff

20   would be able to perform work existing in significant numbers in the national economy up until

21   October 26, 2006. AR 1133. Because Plaintiff's age category changed on October 26, 2006,

22   however, and because the ALJ found Plaintiff was not able to transfer job skills to other

23   occupations, the Medical Vocational Guidelines directed a finding of disability at that date due to

24

1   Plaintiff having reached age 50. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.14. Thus,

2   the ALJ found Plaintiff was disabled within the meaning of Sections 216(i), 223(d), and

3   1614(a)(3)(A) of the Social Security Act from October 26, 2006 forward, but not disabled for the

4   time period from February 3, 2004 through October 25, 2006. AR 1133-34.

5       Plaintiff, however, argues the RFC finding did not include the more restrictive limitations

6   testified to by Plaintiff and opined to by several medical sources. Thus, Plaintiff argues he should

7   have been found disabled for the entire period between February 3, 2004 and November 25,

8   2008.

9   I.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

10          **A.  Standard**

11      The ALJ has the responsibility to determine credibility and resolve ambiguities and

12   conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Where

13   the medical evidence in the record is not conclusive, "questions of credibility and resolution of

14   conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

15   1982). Determining whether or not inconsistencies in the medical evidence "are material (or are

16   in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of

17   medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169

18   F.3d 595, 603 (9th Cir. 1999).

19      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

20   opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

21   821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.

22   Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

23   examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

24

1  set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

2  *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, 81 F.3d at 831). The ALJ

3  can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

4  clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at

5  725 (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own

6  interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing*

7  *Embrey*, 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without

8  explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*,

9  739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir.

10  1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence."

11  *Flores*, 49 F.3d at 571.

12  ### B.  Application of Standard

13  #### *1. Curtis L. Hill, M.D.*

14  Dr. Hill treated Plaintiff for his lumbar radiculopathy and other low back issues since

15  March 1, 2004. AR 178-79. On April 21, 2004, Dr. Hill opined Plaintiff, due to his condition,

16  would be able to: lift up to 20 pounds occasionally; occasionally bend, kneel, crawl, climb stairs,

17  reach above his shoulder, and push or pull no more than 10 pounds; would not be able to engage

18  in medium dexterity or power gripping with his hands; and would be able to do no more than 1

19  hour of sedentary activity per eight hour work day. AR 218-19. Dr. Hill also opined Plaintiff

20  could only sit without pain for no more than one and a half hours. AR 219.

21  The ALJ gave Dr. Hill's opinion limited weight for two reasons:

22  First, his statement that the claimant could only perform sedentary work for one
23  hour is internally inconsistent with his assessment that the claimant could lift and
   carry up to 20 pounds occasionally. Second, Dr. Hill's opinion was issued only
   two months following the claimant's motor vehicle accident. As indicated by Dr.

24

Hill, the claimant was still recovering and undergoing physical therapy at the time.

AR 1128.

Plaintiff argues the ALJ's second reason for discounting Dr. Hill's opinion was not a specific and legitimate reason supported by substantial evidence. The Court agrees. An ALJ may reject a physician's opinion when it fails to adequately assess a claimant's "long-term functioning." *Carmickle v. Comm'r*, *Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). But, in this case, the ALJ failed to support this conclusion with substantial evidence. The mere fact Dr. Hill's opinion was issued shortly after Plaintiff's February 3, 2004 automobile accident, without more, does not establish Plaintiff's functioning actually improved from this point. In fact, it is not clear the ALJ even cited the proximity between the date of Dr. Hill's opinion and the automobile accident as a basis to show Plaintiff's condition improved. The ALJ's opinion, as written, simply seems to suggest the temporal proximity between the accident and the opinion is, itself, a basis to find Dr. Hill's opinion suspect.

For her part, Defendant cites to several records she contends reflect Plaintiff's functioning improved after Dr. Hill rendered his opinion. *See* AR 224, 230, 240, 249, 306, 309, 323, 343, 347, 538, 616. However, it is not clear these records actually support a conclusion Plaintiff's condition improved after the February, 2004 accident. *See* AR 249 (documenting "minimal improvement" in Plaintiff's condition as of February 15, 2005). In any event, the ALJ did not rely on these records in discounting Dr. Hill's opinion, and this Court will not engage in a post-hoc rationalization in order to consider what the ALJ might have been thinking. *See Bray v. Comm'r*, *Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). The ALJ's discounting Dr. Hill's opinion because it was issued only two months following the claimant's motor vehicle accident is thus unsupported by substantial evidence.

1    However, an ALJ may properly discount a medical opinion where the opinion is

2  internally inconsistent. *See Morgan,* 169 F.3d at 602-03. Here, Dr. Hill opined Plaintiff would be

3  able to perform no more than one hour of sedentary work per eight hour workday, which is

4  defined on the form Dr. Hill used as "10 lbs. maximum lifting or carrying articles.

5  Walking/standing on occasion. Sitting 6/8 hours." AR 219. But, Dr. Hill also opined Plaintiff

6  would be able to lift up to 20 pounds at one time, for up to one-third of the workday. AR 219.

7  The fact Dr. Hill concluded Plaintiff could lift up to 20 pounds up to one-third of the work day is

8  inconsistent with his conclusion Plaintiff could lift no more than 10 pounds no more than one

9  hour per day. The ALJ was entitled to consider this inconsistency when evaluating Dr. Hill's

10  opinion.[2] Thus, the ALJ properly discounted Dr. Hill's opinion for a specific and legitimate

11  reason supported by substantial evidence.

12                    *2. R. Steven Butterfield, M.D.*

13    Dr. Butterfield was one of Plaintiff's treating physicians. On September 28, 2004, Dr.

14  Butterfield examined Plaintiff and completed an insurance form describing his findings. AR 228.

15  On this form, Dr. Butterfield indicated Plaintiff was "currently disabled but at this time do not

16  predict permanent disability." AR 228. Dr. Butterfield subsequently completed a letter on

17  December 1, 2004 to the Washington Department of Social and Health Services, where he

18  opined Plaintiff is currently unable to sit or stand for more than 20-30 minute periods without

19  significant pain, and required "around the clock narcotic pain medication for control of his

20  symptoms." AR 279.

21

22    [2] Notably, Plaintiff failed to address this aspect of the ALJ's opinion in his opening brief.
*See* Dkt. 21, p. 5. Plaintiff has the burden of demonstrating harmful error in the ALJ's decision.

23  *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). Arguments not raised with specificity in a party's
opening brief are waived. *See also Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006), *Bisuano*

24  *v. Colvin*, 584 Fed.Appx. 512, 514 (9th Cir. 2014). Thus, even if this were error, Plaintiff has waived
the issue on appeal.

1    The ALJ gave little weight to either of Dr. Butterfield's opinions for the following

2    reason:

3        His opinion [Plaintiff was currently disabled] is not supported by his own
         examination findings in September 2004, which indicated that the claimant had
4        mild weakness, but full range of motion of the hips, intact deep tendon reflexes,
         intact lower extremity sensation, an equivocal straight leg raise, and a steady gait.
5        [AR 309]. Dr. Butterfield's opinion is also inconsistent with his own examination
         findings in October, 2004, indicating that the claimant had minimal pain to
6        palpation in the bilateral muscle area, that he was able to raise from his seat
         without difficulty, and that he had a normal gait. [AR 306].

7
         For similar reasons, I give little weight to Dr. Butterfield's opinion in December
8        2004. [AR 275-301] I note that, when examined in December 2004, the claimant
         had an intact musculoskeletal examination, characterized by normal sensation,
9        reflexes, and motor function. [AR 240].

10   AR 1128. Plaintiff argues this reason was not supported by substantial evidence, as more recent

11   evidence was consistent with Dr. Butterfield's opinion.

12       The consistency of a medical opinion with the record is an important factor in weighing a

13   medical opinion's credibility. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Further,

14   inconsistency between a physician's opinion and his treatment notes, or inconsistency between a

15   physician's opinion and the medical record, are specific and legitimate reasons for discounting a

16   physician's opinion. *See Morgan*, 169 F.3d at 601-02; *Tommasetti*, 533 F.3d at 1038. *See also*

17   *Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003); *Weetman v. Sullivan*, 877 F.2d 20, 23

18   (9th Cir. 1989). Here, the ALJ properly noted Dr. Butterfield's two opinions are inconsistent

19   with Dr. Butterfield's own treatment notes, as well as contemporaneous examinations contained

20   in the record. On September 28, 2004, Dr. Butterfield noted mild weakness but full range of

21   motion in his hips, as well as an equivocal straight leg raise and a steady gait. AR 309. Further,

22   on October 21, 2004, Dr. Butterfield documented minimal pain to palpitation in his low back,

23   and indicated he was able to raise himself from his seat without difficulty. AR 306. Finally, on

24

1  December 28, 2004, Plaintiff presented to the emergency room, where he had an unremarkable

2  physical examination, with normal range of motion in his extremities, normal back inspection,

3  and normal reflexes. AR 240.

4       Plaintiff does not challenge the ALJ's conclusion that these treatment notes were

5  inconsistent with Dr. Butterfield's opinions. Instead, he argues other evidence in the record was

6  consistent with Dr. Butterfield's opinions. At best, however, Plaintiff has raised an ambiguity in

7  the evidence the ALJ was entitled to resolve. *See Morgan*, 169 F.3d at 603. Thus, the ALJ did

8  not err by discounting Dr. Butterfield's opinions.

9                   *3. Penny I. Burdick, M.D.*

10                 *a.   Dr. Burdick's July, 2006 Opinion*

11       Dr. Burdick began treating Plaintiff for his lower back impairments on March 7, 2006.

12  AR 721. On July 13, 2006, Dr. Burdick performed a physical examination and completed an

13  associated physical evaluation form for the Washington State Department of Social and Health

14  Services. AR 402. During this examination, Dr. Burdick diagnosed Plaintiff with L5-S1 disc

15  herniation and spondylolisthesis, right elbow tendinitis, and left hand carpal tunnel syndrome.

16  AR 404. As a result of these impairments, Dr. Burdick opined Plaintiff would have moderate

17  limitations in his ability to sit, stand, walk, lift, handle, and carry objects, and would have

18  restricted ability to bend, climb, crouch, kneel, push, pull, sit, and stoop. AR 404. Dr. Burdick

19  also opined Plaintiff's ongoing symptoms would limit his ability to sit for over twenty minutes at

20  a time, walk thirty minutes at a time, or push or pull over 30 pounds at one time. AR 404. Thus,

21  Dr. Burdick opined Plaintiff would be limited to sedentary work. AR 404.

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 9

1        The ALJ gave Dr. Burdick's July, 2006 opinion less than full weight for the following

2  five reasons:

3        **[1]** I find that the claimant's right elbow tendinitis is non-severe because it did not
cause persistent limitations for a continuous period of 12 months or more. **[2]**

4        While the claimant had left carpal tunnel syndrome at the time of the evaluation, the claimant subsequently underwent a left carpal tunnel release in October 2006.

5        When seen for a postoperative appointment in November, 2006, the claimant demonstrated grip strength and pinch strength in the left hand of 80 pounds and

6        20 pounds, respectively [AR 562]. **[3]** Later that month, he reported being able to perform activities without a brace, including riding his 470-pound motorcycle

7        without pain [AR 565, 1234-36]. I note that riding a motorcycle requires good use of one's hands to operate the clutch, throttle, and brake and wrist mobility and

8        hand strength to operate the clutch, throttle, and brake, and requires an ability to tolerate the vibration accompanied with the movement of such a vehicle. Based

9        on the overall evidence, I find that, prior to November 2008, the claimant retained the ability to use his upper extremities for light level lifting and carrying.[2]

10

11        **[4]** Finally, while I agree with Dr. Burdick that the claimant could not perform continuous sitting for an entire 8 hours, her opinion that the claimant was limited

12        to sitting for only 20 minutes at a time is inconsistent with his ability to ride a motorcycle. **[5]** Indeed, Dr. Burdick's opinion about the claimant's sitting

13        restrictions also appears to rely heavily on the claimant's self-report of pain and limitations. As discussed above, though, the [sic] his subjective report of pain is

14        not fully reliable given evidence of drug seeking behavior. Moreover, as indicated by Dr. Burdick in October 2006, "I can document the subjective sx. [the claimant]

15        reports to me, but have no way to objectively substantiate pain-induced limitations, activities, and need for physical assistance when he is not in my

16        office" [AR 352]. For these reasons, I give greater weight to Dr. Burdick's January 2007 assessment that the claimant could sit for up to two hours at a time

17        (which is consistent with normal breaks (i.e., work for 2 hours, 15-minute break, work for 2 hours, lunch, work for 2 hours, 15-minute break, work for 2 hours, go

18        home)) because it more accurately reflects the overall evidence prior to November, 2008 [AR 438].

19

20    [2] Nonetheless, even if the claimant were limited to sedentary-level lifting and/or carry, it would not preclude him from being able to perform any of the sedentary

21    occupations identified by the vocational expert below.

22  AR 1129-30 (numbering added). Plaintiff argues these were not specific and legitimate reasons,

23  supported by substantial evidence, for discounting Dr. Burdick's July, 2006 opinion. The Court

24  disagrees.

1       First, while Plaintiff argues all of the ALJ's reasons for discounting Dr. Burdick's

2 opinion are improper, Plaintiff only addresses three of the five reasons the ALJ identified for

3 discounting Dr. Burdick's opinion. Specifically, Plaintiff fails to address the ALJ's finding

4 Plaintiff's right elbow tendinitis was non-severe as it did not cause persistent limitations for a

5 continuous period of 12 months or more. Plaintiff also fails to discuss the ALJ's conclusion that

6 Plaintiff's ability to perform activities without a brace—such as operating a 470 lb motorcycle—

7 is inconsistent with Dr. Burdick's manipulative and lifting limitations. However, these are

8 specific and legitimate reasons, supported by substantial evidence, for the ALJ to discount Dr.

9 Burdick's July, 2006 opinion. The medical evidence post-dating Dr. Burdick's July 2006 opinion

10 does not indicate Plaintiff's right elbow tendinitis lasted for a continuous period of not less than

11 12 months. *See* 42 U.S.C. § 423(d)(1)(A). *See also*, *e.g.*, *Gregory v. Bowen*, 844 F.2d 664, 666

12 (9th Cir. 1988). Further, the ALJ properly discounted Dr. Burdick's opinion as to Plaintiff's

13 upper extremity limitations by reference to Plaintiff's daily activities, such as his motorcycle

14 riding. *See Morgan,* 169 F.3d at 600-02. *See also* AR 565 ("he does state he was riding his

15 motorcycle and doing the clutch without pain").

16       Plaintiff also argues the ALJ erred by concluding Plaintiff's performance on a grip-

17 strength test post-dating his carpal tunnel release surgery indicates Plaintiff's condition improved

18 after Dr. Burdick's July, 2006 opinion. *See* AR 562. Plaintiff's sole argument to this effect is that

19 Plaintiff's left-hand grip strength of 80 pounds is "very poor." Dkt. 21, p. 7, (*citing* Handgrip

20 Strength Test, http://www.topendsports.com/testing/tests/handgrip.htm (accessed November 23,

21 2016)). [3] However, the Court is constrained to review whether the ALJ's conclusion is supported

22

23       [3] The sole source Plaintiff offers for this proposition is a citation to a webpage on

24 "Topendsports.com." Handgrip Strength Test,

1   by substantial evidence in the record as a whole. *C.f.*, *Taylor v. Comm'r, Soc. Sec. Admin.*, 659

2   F.3d 1228, 1232 (9th Cir. 2011). Here, the ALJ noted Dr. Burdick's opinion of Plaintiff's ability

3   to lift, carry, and manipulate items improved between her July, 2006 opinion and her January,

4   2007 opinion. *Compare* AR 404 (limiting Plaintiff to lifting and handling restrictions consistent

5   with sedentary work) *with* AR 438 (limiting Plaintiff to lifting and handling restrictions

6   consistent with light work). The ALJ noted Plaintiff underwent a carpal tunnel release surgery in

7   October, 2006, and demonstrated 80 pounds of left hand grip strength postoperatively. AR 562.

8   Though this record also indicates Plaintiff had "decreased strength" in his left hand, this does not

9   contradict the ALJ's conclusion Plaintiff's condition improved to the point where Plaintiff could

10  use his hand consistent with the requirements of light work, as described by Dr. Burdick in

11  January, 2007. The ALJ's interpretation of this evidence is rational, and the Court will not

12  disturb it. *See Sample*, 694 F.2d at 642.

13      Second, Plaintiff argues the ALJ failed to demonstrate how Plaintiff's motorcycle riding

14  is inconsistent with Dr. Burdick's opinion Plaintiff would be unable to sit for more than 20

15  minutes at a time. However, the record contains conflicting statements concerning the amount of

16  time Plaintiff could ride his motorcycle. For example, the ALJ noted Plaintiff would ride up to

17  14 miles at a time on "toy runs" for a children's charity. AR 1127, 1235. During a follow-up

18  examination from his carpal tunnel release surgery, Plaintiff indicated he was hoping to take a

19  sixteen-hour road trip on his motorcycle to Lake Shasta, California. AR 561 ("he also complains

20  _____

21  http://www.topendsports.com/testing/tests/handgrip.htm (accessed November 23, 2016). The
    Court is not a medical expert, and will not presume to re-interpret the significance of Plaintiff's
22  80 pound left-hand grip strength test result. Even if the Court were inclined to reach outside the
    record in order to interpret the 80 pound grip strength test score, the Court would not rely on the
23  source Plaintiff provides. *Id.* Plaintiff's citation appears to be a resource for athletes, and does
    not contain any support for the grip strength test results it offers. *Id.* (noting "source and
24  population group unknown" for the table of grip strength scores).

1  that because of the pain *in his elbow* he cannot go long distances on his motorcycle.") (emphasis

2  added). *See also* AR 560 (noting Plaintiff reported tingling in his left hand after engaging in

3  "prolonged riding on his motorcycle"). Finally, as the ALJ noted, "riding a motorcycle . . .

4  requires an ability to tolerate the vibration accompanied with the movement of such a vehicle."

5  AR 1129. In light of the conflicting evidence, the ALJ's interpretation of Plaintiff's motorcycle-

6  riding was rational, and constituted a specific and legitimate reason for giving Dr. Burdick's

7  July, 2006 opinion less than full weight.

8        Finally, Plaintiff argues the ALJ erred by concluding Dr. Burdick's opinion was based

9  primarily on Plaintiff's subjective symptom testimony, rather than on objective medical

10  evidence. However, Dr. Burdick clearly and unambiguously indicated in October, 2006, she had

11  "no way to objectively substantiate pain-induced limitations to [Plaintiff's] endurance, activities,

12  and need for physical assistance when he is not in my office." AR 352. Further, "[a]n ALJ may

13  reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports

14  that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

15  (9th Cir. 2008). As discussed in Section II, below, the ALJ properly discounted the degree of

16  Plaintiff's subjective symptom testimony.

17        Because the ALJ offered specific and legitimate reasons, supported by substantial

18  evidence, for giving less than full weight to Dr. Burdick's July, 2006 opinion, the ALJ did not

19  err.

20                   *b.  Dr. Burdick's January, 2007 Opinion*

21        In January, 2007, Dr. Burdick rendered a second opinion indicating Plaintiff had fewer

22  and less restrictive functional limitations that those Dr. Burdick previously opined to in July,

23  2006. AR 438. At this time, Dr. Burdick opined Plaintiff could sit for up to two hours at one

24

1    time, frequently lift and carry objects up to 10 lbs in weight, occasionally carry objects up to 25

2    lbs in weight, and would have no limitations in using his hands to engage in simple grasping,

3    pushing and pulling, and fine manipulation. AR 438. Dr. Burdick also opined Plaintiff would

4    only be able to bend, climb stairs, and reach above shoulder level on an occasional basis only.

5    AR 438. The ALJ found Dr. Burdick's January, 2007 opinion was more consistent with the

6    overall medical evidence of record, and gave it great weight.

7         Plaintiff argues the ALJ erred by giving Dr. Burdick's January, 2007 opinion greater

8    weight than her earlier opinion for two reasons. First, Plaintiff states the January, 2007 opinion is

9    "three months after the period at issue here." But, the period at issue in this case is February 3,

10   2004 through November 25, 2008. As the ALJ's theory of disability is that Plaintiff's RFC has

11   remained constant throughout this time period, but Plaintiff's change in age category on October

12   25, 2006 is what rendered him disabled, Dr. Burdick's January, 2007 opinion is still relevant to

13   assessing Plaintiff's RFC during the period at issue. *See* AR 1132-34, 1243-49. Also, Ninth

14   Circuit case law has made it clear medical opinions post-dating the expiration of a claimant's

15   insured status are not categorically irrelevant to the question of whether a claimant is disabled.

16   *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996).

17        Plaintiff also argues in a conclusory fashion that the ALJ failed to incorporate one of the

18   limitations from Dr. Burdick's January, 2007 opinion into the RFC. Specifically, Plaintiff argues

19   the ALJ did not include Dr. Burdick's opinion Plaintiff would be limited to occasional bending.

20   However, Plaintiff has failed to carry his burden of demonstrating this was error, let alone

21   harmful error. The RFC finding contains a restriction to occasional stooping, as well as a blanket

22   prohibition on kneeling or crawling. AR 1123. An ALJ's failure to use the specific words "bend

23   and stoop" in a hypothetical to a vocational expert is not error when the ALJ nonetheless

24

1    includes restrictions on kneeling and crawling. *Chamberlain v. Shalala*, 47 F.3d 1489, 1495 (8th

2    Cir. 1995). As the Eighth Circuit explained, Social Security Ruling ("SSR") 85-15 "treats

3    bending and stooping synonymously with kneeling and crawling." *Id.* (*citing* SSR 85-15,

4    *available at* 1985 WL 56857). Thus, the ALJ accounted for all of Dr. Burdick's opined

5    limitations contained in her January, 2007 opinion. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14

6    (9th Cir. 1999) (noting the ALJ did not need to offer clear and convincing reasons to reject a

7    physician's opinion, where the ALJ accepted all of the physician's findings).

8         The ALJ did not err by giving Dr. Burdick's January, 2007 opinion great weight, and the

9    ALJ properly incorporated all of Dr. Burdick's opined limitations into the RFC finding.

10                          *4. Kimberly L. Anderson, ARNP*

11        On February 15, 2005, Ms. Anderson performed a physical examination of Plaintiff and

12   completed a physical evaluation form for the Washington State Department of Social and Health

13   Services. AR 248. During the examination, Ms. Anderson documented positive Phalen's sign

14   bilaterally in Plaintiff's wrists, lumbar spine tenderness, reduced range of motion, and

15   radiculopathy into Plaintiff's hips and lower extremities. AR 249. Ms. Anderson diagnosed

16   Plaintiff with lumbar spondylolisthesis, lumbar herniated disk, depression, and bilateral carpal

17   tunnel syndrome. AR 250. As a result of these impairments, Ms. Anderson opined Plaintiff

18   would have marked limitations in his ability to sit, stand, lift, handle, and carry, and mild

19   limitations in his ability to communicate. AR 250. Ms. Anderson also opined Plaintiff would

20   have difficulty sitting for over 30 minutes at one time, and would experience pain when

21   attempting to lift items greater than 10 pounds. AR 250.

22        The ALJ gave little weight to Ms. Anderson's opinion for five reasons:

23        **[1]** First, she is not an acceptable medical source. As will be discussed below, I
          give greater weight to the January 2007 opinion of Dr. Burdick [AR 438], who is

24

an acceptable medical source. **[2]** Second, while the claimant had some back problems, the longitudinal evidence prior to November 2008 indicate that he usually demonstrated negative or equivocal straight leg raises [AR 179, 225, 306, 309] and full motor strength, deep tendon reflexes, and sensation throughout the lower extremities on examinations [AR 155, 166-67, 222, 230, 240, 323, 343, 347]. Additionally, apart from mild antalgia in February 2005 [AR 247], his gait, coordination, and balance were often described as intact during appointments [AR 210, 230, 249, 588, 616]. The overall evidence during the period is therefore inconsistent with Ms. Anderson's opinion that the claimant is severely limited.

**[3]** Third, although the claimant had carpal tunnel syndrome at the time of his evaluation with Ms. Anderson, it did not preclude him from continuing to ride his motorcycle [AR 288]. Riding a motorcycle requires wrist mobility and hand strength to operate the clutch, throttle, and brake, and requires an ability to tolerate the vibration accompanied with the movement of such a vehicle.

**[4]** Moreover, the record indicates that his hand functioning improved significantly following his carpal tunnel releases in August 2005 and October 2006. When examined in November 2006, he demonstrated grip strength and pinch strength in the right hand of 110 to 115 pounds and 25 pounds, respectively, and grip strength and pinch strength in the left hand of 80 pounds and 20 pounds, respectively. AR 562. I therefore find that the overall evidence prior to November 2006 indicated that he retained the ability to perform light level lifting and carrying as well as simple grasping, pushing, and pulling and for fine manipulation. **[5]** Finally, Ms. Anderson's opinion appears to rely heavily on the claimant's subjective pain complaints and his self-reported limitations. However, as well documented above, the claimant's allegations of pain are undermined by evidence of drug seeking behavior.

AR 1129-30 (numbering added). Plaintiff argues two of the five reasons (numbers 1 and 2) were neither specific and legitimate reasons, nor were they supported by substantial evidence in the record.

First, Plaintiff argues the ALJ cannot discount Ms. Anderson's opinion solely because Ms. Anderson is not "an acceptable medical source". Nurse practitioners and therapists are considered "other sources," rather than "acceptable medical sources" under Social Security regulations. *See* 20 C.F.R. §§ 404.1513(d)(1) & (3). Thus, the ALJ only needs to provide arguably germane reasons to reject their testimony. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010); *Lewis v. Apfel*,

1   236 F.3d 503, 511 (9th Cir. 2001).[4] *See also* SSR 06-03p, at *5, *available at* 2006 WL 2329939;

2   *Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014). An ALJ may not discount a nurse

3   practitioner's opinion simply because she is not an acceptable medical source. *Sanchez v.*

4   *Commissioner of Soc. Sec. Admin.*, 2014 WL 4678282, *3 (E.D. Cal. 2014) (emphasis added)

5   (*citing*; SSR 06-03p, at *4, *available at* 2006 WL 2329939). However, an ALJ may give more

6   weight to the opinion of an acceptable medical source over that of an "other medical source." 20

7   C.F.R. § 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). SSR 06-3p, *available*

8   *at* 2006 WL 2329939, at *5 ("[t]he fact that a medical opinion is from an 'acceptable medical

9   source' is a factor that may justify giving that opinion greater weight than an opinion from a

10  medical source who is not an 'acceptable medical source'"). Here, the ALJ noted Ms. Anderson

11  was not an acceptable medical source, and, critically, identified the January, 2007 opinion of Dr.

12  Burdick—an "acceptable medical source"-- as warranting greater weight. This was proper, and

13  consistent with Ninth Circuit case law and Social Security Administration regulations in

14  existence at the time of the ALJ's decision. 20 C.F.R. § 416.927; *Gomez*, 74 F.3d at 970-71.

15      Also, Plaintiff argues the ALJ erred by giving more weight to Dr. Burdick's January,

16  2007 opinion, as it was three months after the period at issue in this case. But, as discussed

17  _____

18      [4] Plaintiff argues the Social Security Administration has recently amended its regulations
    to include ARNPs in the list of acceptable medical sources, thus requiring this Court to apply the

19  "specific and legitimate reasons" standard. *See* Dkt. 23, p. 3. However, the amendments cited by
    Plaintiff are still proposed rules, and have yet to be adopted. *See* Revisions to Rules Regarding

20  the Evaluation of Medical Evidence, 81 Fed. Reg. 62560 (proposed Sept. 9, 2016). Even if these
    proposed rules had been formally adopted, 42 U.S.C. § 405 does not contain any express

21  authorization from Congress allowing the Commissioner to engage in retroactive rulemaking.
    *See Bowen v. Georgetown Univ. Hosp*, 488 U.S. 204, 214-215 & n.3 (1988). *See also Portlock v.*

22  *Barnhart*, 208 F.Supp.2d 451, 456 (D. Del. June 24, 2002) (holding the application of a recently-
    revised SSR to an applicant's pending claim on appeal would constitute an impermissible

23  retroactive application of an agency rule) (*citing Bowen*, 488 U.S. at 224). The ALJ's use of the
    "germane reasons" standard is consistent with Social Security Administration regulations in

24  effect at the time of the ALJ's decision.

1  above, the period at issue in this case extends from February 3, 2004 through November 25,

2  2008. The ALJ's RFC finding applies to the entirety of this nearly four-year period; the only

3  reason the ALJ determined Plaintiff was disabled as of October 26, 2006 was due to a change in

4  his age category rather than a change in his RFC. Thus, the medical opinions post-dating

5  Plaintiff's change in age category remain relevant evidence the ALJ—and this Court—must

6  consider.

7        Second, Plaintiff argues the longitudinal evidence in the record is actually consistent with

8  Ms. Anderson's opinion. However, the ALJ identified numerous items in the record which were

9  inconsistent with Ms. Anderson's opinion. AR 179, 225, 306, 309 (reflecting Plaintiff had

10 negative or equivocal straight leg raise tests); AR 155, 166-67, 222, 230, 240, 323, 343, 347 (full

11 motor strength, deep tendon reflexes, and sensation throughout the lower extremities); AR 210,

12 230, 249, 588, 616 (reflecting Plaintiff had a normal gait). The ALJ also noted Ms. Anderson's

13 opinion was inconsistent with the fact Plaintiff continued to ride a motorcycle. AR 1128. These

14 inconsistencies were germane reasons for discounting Ms. Anderson's opinion. *See Lewis v.*

15 *Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). At most, the other evidence Plaintiff argues is

16 consistent with Ms. Anderson's opinion merely creates an ambiguity in the record the ALJ was

17 entitled to resolve.

18       Because the ALJ offered germane reasons for discounting Ms. Anderson's opinion, the

19 ALJ did not err.

20

21

22

23

24

1

*5. Donna J. West, ARNP*

2     Plaintiff also argues, in conclusory fashion, the ALJ erred in evaluating the opinion of

3 Ms. West. The Court disagrees.

4     Plaintiff argues the ALJ failed to offer "legitimate" reasons for discounting Ms. West's

5 opinion. Dkt. 21, p. 9. However, as with Ms. Anderson, the ALJ was only required to offer

6 arguably germane reasons to discount the opinion of a treating nurse practitioner. *Turner,* 613

7 F.3d at 1224; *Lewis*, 236 F.3d at 511. More significantly, the distinction is largely academic here,

8 as Plaintiff makes no attempt to explain how the ALJ's reasoning is insufficient under *either*

9 standard. Plaintiff simply states "none of the ALJ's reasons are legitimate." This bare,

10 conclusory argument fails to satisfy Plaintiff's burden of demonstrating error, or otherwise

11 preserve any argument pertaining to Ms. West on appeal. *See Greenwood v. F.A.A.*, 28 F.3d 971,

12 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion

13 does not preserve a claim, particularly when, as here, a host of other issues are presented for

14 review."). *See also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)(per curiam).

15 Because Plaintiff has failed to offer any argument as to how the ALJ erred in evaluating Ms.

16 West's opinion, the Court declines to do so in his stead.

17     II.     Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by
              Substantial Evidence, for Discounting Plaintiff's Subjective Symptom Testimony.

18

19     If an ALJ finds a claimant has a medically determinable impairment which reasonably

20 could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the

21 ALJ may reject the claimant's testimony only "by offering specific, clear and convincing

22 reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12

23 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility

24 for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*

1   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7

2   (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one

3   rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence

4   in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair*,

5   885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the

6   evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

7   decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a

8   credibility determination where that determination is based on contradictory or ambiguous

9   evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for

10  discrediting a claimant's testimony should properly be discounted does not render the ALJ's

11  determination invalid, as long as that determination is supported by substantial evidence.

12  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

13      Here, Plaintiff argues the ALJ failed to offer specific, clear, and convincing reasons for

14  discounting Plaintiff's testimony concerning the degree of his pain and its associated limitations.

15  The Court disagrees.

16      First, the ALJ found the objective medical evidence in the record contradicted Plaintiff's

17  testimony concerning the severity of his lower back pain and its associated limitations. AR 1124-

18  25. This was proper. *See Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir.

19  1998). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

20  corroborated by objective medical evidence, the medical evidence is still a relevant factor in

21  determining the severity of the claimant's pain and its disabling effects." *See Rollins v.

22  Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (*citing* 20 C.F.R. § 404.1529(c)(2)). Here, the ALJ

23  noted Plaintiff responded positively to bilateral wrist surgeries, and demonstrated improved

24

1  functioning in his upper extremities after completion of the surgeries. *See* AR 328-29, 422-23,

2  565, 598, 600, 606. The ALJ also found Plaintiff had largely negative or equivocal straight leg

3  raise tests, full motor strength, deep tendon reflexes, and intact sensation in his lower extremities

4  AR 155, 166-67, 179, 210, 222, 225, 230, 240, 249, 306, 309, 323, 343, 347, 588, 616. Though

5  the ALJ found these medical records supported some walking, standing, and sitting limitations,

6  the ALJ found this evidence was inconsistent with the more extreme limitations Plaintiff had

7  claimed, such as a need to lie down frequently throughout the day. AR 1124-25.

8          Second, the ALJ discounted Plaintiff's testimony concerning the severity of his pain due

9  to his history of drug-seeking behavior. The Ninth Circuit has previously held an ALJ may,

10 under certain circumstances, discount a claimant's subjective symptom testimony due to drug-

11 seeking behavior. *See Edlund v. Massanari*, 253 F.3d 1152, 1157-58 (9th Cir. 2001). In *Edlund*,

12 the evidence indicated the claimant had been unlawfully trading his prescription painkillers from

13 his treating physician for Valium, which the Ninth Circuit found undermined the claimant's

14 credibility concerning his subjective pain testimony. *Id.* at 1155, 1157-58. Here, similarly, the

15 ALJ identified numerous instances where Plaintiff's requests for stronger medications were

16 denied due to concerns by providers over Plaintiff's drug-seeking behavior (AR 354-55, 361-62,

17 366); where Plaintiff improperly used his prescribed medications (AR 265, 351-52); where

18 Plaintiff requested a prescription for medical marijuana without meeting Washington State

19 criteria for medical marijuana eligibility (AR 351-52); and where Dr. Butterfield terminated his

20 care due to Plaintiff's request for an early refill of his methadone prescription, after prior

21 incidents where he requested early refills of prescription medications and reported using Vicodin

22 as a substitute for his methadone (AR 391; *see also* AR 265, 280). The ALJ, consistent with

23

24

1    *Edlund*, rationally concluded this evidence undermined Plaintiff's description of the severity of

2    his pain.

3            Plaintiff contends his long history with strong pain medicines is evidence which actually

4    corroborates his reports of debilitating pain. The Court is aware prescription painkillers are

5    powerful narcotics in their own right, and that the medically-sanctioned use of such painkillers

6    can lead to dependency as an unintended consequence. But, at most, Plaintiff's argument raised a

7    plausible alternative interpretation of the record. It does not, however, render the ALJ's

8    interpretation any less plausible. *See Thomas*, 278 F.3d at 954. On the record before this court,

9    Plaintiff's "drug-seeking behavior" was a specific, clear, and convincing reason, supported by

10   substantial evidence, for the ALJ to discount the severity of Plaintiff's pain as described in his

11   testimony. *See Edlund*, 253 F.3d at 1157-58.[5]

12           Third, the ALJ found Plaintiff's activities of daily living—specifically, Plaintiff's

13   ongoing ability to ride his motorcycle—was inconsistent with the alleged severity of his

14   disability. Inconsistencies between a claimant's testimony concerning his limitations and the

15   claimant's activities of daily living are clear and convincing reasons, supported by substantial

16   evidence, for discrediting a claimant's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

17   2007). As discussed more thoroughly, above, Plaintiff has reported being able to operate a 470 lb

18   motorcycle at various points during the period at issue. AR 560-61, 1235. The ALJ rationally

19

20           [5] Plaintiff quotes this Court's prior decision, where the Court said "[i]f Mr. Spencer was a

21   drug seeker, there is no evidence that he was a drug seeker who used dishonesty or otherwise
     attempted to conceal his drug dependence from his health care providers." AR 1031. However,

22   Plaintiff omits the portion of the decision where the Court indicates it "expresses no opinion on
     the ALJ's conclusion" Plaintiff's drug-seeking behavior reflected Plaintiff was prone to

23   exaggerate his symptoms. Instead, the Court previously noted the ALJ failed to address the
     question of whether the side effects of Plaintiff's medication imposed any additional limitations.

24   AR 1032-33.

1    concluded operation of a motorcycle required wrist mobility and hand strength, as well as an

2    ability to tolerate the vibration accompanied with the movement of the motorcycle. AR 1127.

3    Thus, the ALJ properly concluded this was inconsistent with Plaintiff's claimed limitations. *See*

4    1124, 1127.

5            Fourth, the ALJ discounted Plaintiff's report of impairments arising from side effects of

6    his pain medication by noting the medical records directly contradict such claims. For example,

7    the record reflects his methadone prescription was discontinued following his reports of

8    cognitive impairment. AR 494. However, Plaintiff reported he could tolerate Oxycodone and

9    Oxycontin. AR 332. Similarly, Plaintiff reported in June, 2007 that Oxycontin worked better

10   than methadone with less cognitive effects. AR 484. Plaintiff continued to report positive effects

11   of Oxycontin, going so far as to indicate he was able to manage activities of daily living,

12   household chores, and light outside chores through use of his pain medication. AR 478, 600.

13   Plaintiff fails to offer "clinical evidence showing that narcotics use impaired his ability to work."

14   *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). *See also Nyman v. Heckler*, 779 F.2d 528,

15   531 (9th Cir. 1985) ("a claimant's self-serving statements may be disregarded to the extent they

16   are unsupported by objective findings."). The ALJ's analysis was proper, and constitutes a clear

17   and convincing reason supported by substantial evidence for discounting Plaintiff's testimony

18   concerning the alleged side-effects of his pain medication.

19           Fifth, the ALJ discounted Plaintiff's subjective symptom complaints, in part, because of a

20   history of failing to follow his diabetes treatment recommendations. A claimant's failure to

21   follow a prescribed course of treatment can "cast doubt on the sincerity of the claimant's pain

22   testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, the ALJ fails to identify

23   which disabling limitations Plaintiff alleges were caused by his diabetes, and, thus, could have

24

1    been mitigated had Plaintiff followed his physicians' recommendations. *See* SSR 82-59,

2    *available at* 1982 WL 31384. Thus, it is neither clear nor convincing that Plaintiff's failure to

3    follow his diabetes treatment recommendations. However, because each of the ALJ's other four

4    reasons for discounting Plaintiff's subjective symptom testimony were clear and convincing

5    reasons, supported by substantial evidence, the ALJ's error is inconsequential to the ultimate

6    nondisability determination. *See Molina*, 674 F.3d at 1117. *See also Carmickle,* 533 F.3d at 1162

7    ("so long as there remains substantial evidence supporting the ALJ's conclusions on . . .

8    credibility and the error does not negate the validity of the ALJ's ultimate [credibility]

9    conclusion, such is deemed harmless and does not warrant reversal.").

10          Because the ALJ offered clear and convincing reasons, supported by substantial

11   evidence, for discounting Plaintiff's testimony, the ALJ did not err.

12   III.   Whether the ALJ Erred in Assessing Plaintiff's Residual Functional Capacity and in
            Evaluating Plaintiff's Ability to Work at Step Five of the Sequential Evaluation

13          Plaintiff argues, in conclusory fashion, that the ALJ's RFC determination is flawed as it

14   did not include all of the limitations associated with Plaintiff's severe impairments. Plaintiff also

15   argues this necessarily means the ALJ's findings at Step Five were erroneous, as the

16   hypotheticals propounded to the vocational expert were based on a flawed RFC. However, as

17   discussed in Sections I and II, above, the ALJ properly weighed the medical opinion evidence,

18   and properly discounted Plaintiff's subjective symptom testimony. Thus, there was no error in

19   the ALJ's assessed RFC as it included all of Plaintiff's credible limitations, nor was there any

20   error at Step Five.

21                                       **CONCLUSION**

22          Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

23   properly concluded Plaintiff was not disabled. Therefore, the Court orders this matter be

24

1   affirmed pursuant to sentence four of 42 U.S.C. § 405(g). Judgment should be for Defendant and

2   the case should be closed.

3       Dated this 1st day of December, 2016.

David W. Christel
United States Magistrate Judge